## STEWARD et ux. v. HANSEN. *

### No. 16705.

Court of Appeal of Louisiana. Orleans.

Nov. 15, 1937.

*Rehearing denied Dec. 13, 1937.

John J. Wingrave and Philip R. Livaudais, both of New Orleans, for appellants.

John Wagner, of New Orleans, for appellee.

JANVIER, Judge.

Willie Steward and his wife, Pearl, seek recovery from Mrs. Aurora Hansen, widow of Francis Carrau, whom they allege to be the owner of the premises 2017 Lafayette street, which Willie, as head and master of the community, leased, and in which Pearl is alleged to have sustained injuries because of defective flooring in the bathroom. It is charged that, as Pearl walked into the bathroom in the late afternoon of September 14, 1936, "one of the boards of the flooring of said bathroom, due to its rotten condition, gave way and fell through, and petitioner was thrown violently to the floor of said bathroom, her left leg being forced through the opening caused by the collapse of the said board and her foot coming into violent contact with the ground underneath." It is also alleged that she was unable to extricate herself without assistance; that "she was finally pulled out by two men who responded to her cries for help, the said board came up with her leg, further squeezing and crushing her leg and causing her additional pain." It is further claimed that the injured plaintiff, after returning from the Charity Hospital, was placed in bed, "where she remained for two days under the care of a physician," that she was required to return to the hospital once or twice each week until the filing of the suit, which was some three and one-half months after the accident.

On her behalf $10,000 is sought and Willie Steward, the husband, as head and master of the community, prays for judgment for $16 as reimbursement for the bill of the doctor and for automobile hire and drugs and medicines.

Defendant, after denying her ownership of the premises, denied that the accident occurred as alleged, and especially denied that the injuries, if sustained at all, were in any way serious, and, as an alternative defense, alleged that the premises had been devoted to a purpose not intended in that they were used as a laundry or washroom.

In the court below there was judgment for defendant dismissing plaintiffs' suit and they have appealed.

The hole through which the woman's leg is said to have been projected is shown to have been only four inches wide and the leg is said to have passed through as far as the hip. If the leg went through that far, assuming that it was possible to go through so small an opening, it is certain that it would have sustained scratches, bruises, and contusions, and yet, though she alleges that there were such contusions and bruises, the record leaves no doubt whatever that there was no external evidence of any such injuries. No doctor testified concerning any injuries of any kind and even the Charity Hospital records, on which much reliance is placed, show no objective evidence of injuries. All that these records show is that, from the statement obtained from her when she entered the hospital, the interne thought it possible that she might have sustained a fracture of the neck of the left femur. But immediately following the entry showing the possible fracture is another showing that an X-ray examination disclosed that there had been no fracture. Even the entry showing possible fracture was made in connection with the history of the case, which shows: "Fell through bathroom yesterday." It is obvious that this statement, contained in the record, was obtained from the plaintiff and that the statement as to the possible fracture was made as a result of what she herself said.

When the defendant visited the plaintiff shortly after the accident, she remarked that plaintiff's leg showed no evidence of injury and plaintiff, though she claims that the leg was injured, admits that that remark was made.

The Charity Hospital record is, however, most significant for other reasons. It shows that for several years prior to the alleged accident Pearl Steward had been a frequent visitor at the hospital, suffering from various ailments which, on several occasions, seem to have affected her legs and feet. She first entered the hospital on February 6, 1934, which was nearly two and one-half years before the alleged accident, and she was treated on twenty-four different occasions at the hospital between her first admission in February, 1934, and the day of the alleged accident, September 14, 1936, complaining at times of swelling of her hands and feet.

The enormous amount claimed is so obviously absurd when considered in connection with the total lack of evidence of injury and the absence of testimony of a physician that we cannot give to it serious consideration. If the accident occurred as alleged, it is inconceivable that plaintiff could have escaped external evidence of injury to that leg.

Another circumstance which we consider significant is that plaintiff states that she entered the room where the injuries are alleged to have been received for the purpose of closing the window. The record shows, however, that if she had done so, the hole would have been considerably to her right and her left foot would not have been near it.

In Perique et al. v. Sall & Rosenson et al. (La.App.) 149 So. 134, is found a case somewhat resembling the case at bar. We said:

"We have carefully read plaintiff's testimony, which is unimpressive and unconvincing. While she claims that the board broke under her weight and that she fell through a hole about three feet long and about fifteen or eighteen inches wide, it is not claimed that she suffered any contusions, bruises, scratches, or abrasions. It is quite improbable that she could have violently fallen through the floor of the porch without sustaining some external evidence of traumatic injury."

In Davis v. Shuster (La.App.) 150 So. 424, the facts were very similar to those alleged here and recovery was denied because we felt that no such accident could have occurred without leaving external evidence on the body of the injured person. We said:

"It is significant to note that although the plaintiff alleges and testifies that she sustained a very severe fall and suffered serious injuries, Dr. Frederick Fenno, who examined her two days after the accident, states that he was unable to find any contusions, bruises, abrasions, or lacerations on the alleged injured member. One of plaintiff's witnesses testified that her leg

was swollen and scratched, while another. stated that he did not see any scratches on her leg after the accident occurred.

"The Charity Hospital report shows that the. plaintiff reported to the 'out patient department' on March 30, 1931, three days after the alleged accident, complaining of having sustained a fall which injured her shoulder, chest, and right knee. The entry diagnosis and final diagnosis are negative as to any injury to her lower limb.

"It seems incredible that plaintiff could have fallen through a broken board of the gallery flooring, as she and her witnesses state, without sustaining some evidence of injury to her leg. The splintered edges of the board would have certainly scratched her skin, and if the fall was violent she positively would have been bruised."

It may be that plaintiff was the victim of some sort of accident, and if she was, it is unfortunate that she will not be recompensed for such injuries as she sustained. But the obvious untruthfulness of most of the testimony makes it impossible that we can give to it serious consideration, and we therefore conclude that the accident did not occur at all.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellants.

Affirmed.